UNITED STATES DISTRICT COURT

DISTRICT OF RHODE ISLAND

Michael W. Fontaine,
      Plaintiff

      v.                              Case No. 10-cv-279-SJM-DLM

John E. Potter, Postmaster General,
United States Postal Service,
      Defendant

**O R D E R**

Invoking Title VII of the Civil Rights Act of 1964 and Section 501 of the Rehabilitation Act, Michael Fontaine, a former employee of the United States Postal Service, asserts that various individuals employed at the Wakefield Rhode Island Post Office discriminated against him based upon his disabilities. Specifically, Fontaine says that from approximately November of 2003 through January of 2009, his supervisors failed to reasonably accommodate his various disabilities, permitted co-workers to harass him (thereby creating a hostile work environment), and, ultimately, retaliated against him for having engaged in statutorily protected activity.

Fontaine sues John Potter, in his official capacity as Postmaster General of the United States Postal Service, seeking compensatory damages and an order compelling Potter to reinstate him as a letter carrier (with appropriate accommodations for his

various disabilities). The Postmaster General moves to dismiss all of Fontaine's claims on grounds that he failed to timely exhaust his administrative remedies. See generally Fed. R. Civ. P. 12(b)(6). For the reasons discussed below, that motion is denied.

## Standard of Review

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must "accept as true all well-pleaded facts set out in the complaint and indulge all reasonable inferences in favor of the pleader." S.E.C. v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010). Although the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), it must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (citation and internal punctuation omitted). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Instead, the facts alleged in the complaint must, if credited as true, be sufficient to

"nudge[] [plaintiff's] claims across the line from conceivable to plausible." Id. at 570.

Typically, a court must decide a motion to dismiss exclusively upon the allegations set forth in the complaint (and any documents attached to that complaint) or convert the motion into one for summary judgment. There is, however, a limited exception to that general rule:

> [C]ourts have made narrow exceptions for documents the authenticity of which [is] not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.

Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) (citations omitted). See also Trans-Spec Truck Serv. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008); Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998).

Here, in support of their respective positions on the Postmaster General's motion to dismiss, both parties rely upon facts (which appear to be disputed) and documents that are not referenced in Fontaine's complaint, including Fontaine's medical records and an opinion by one of his treating physicians. Because, in the exercise of its discretion, the court deems it inappropriate to convert the Postmaster General's motion into one

3

for summary judgment, it has not considered those materials in resolving the pending motion to dismiss. See Fed. R. Civ. P. 12(d).

**Background**

Accepting the allegations set forth in the amended complaint as true, the material facts are as follows. Fontaine began working for the United States Postal Service ("USPS") in September of 1984, apparently as a temporary worker. In 1995, he became a full-time letter carrier. In the fall of 2003, however, he developed a seizure disorder and was no longer able to drive USPS vehicles. Accordingly, his supervisor assigned him to walking routes and had him sorting mail for other letter carriers. Fontaine says he was not afforded adequate rest periods and, as a consequence, developed injuries to his wrists and shoulder which required medical treatment and therapy.

In 2007, Fontaine's supervisor assigned him to inside duty as an "L-69," essentially sorting mail for letter carriers. Fontaine claims his co-workers "harassed and abused" him for setting out too much mail for them to deliver. He says that although his supervisor was aware of this harassment and abuse, she took no steps to curb it. That, in turn, caused Fontaine to develop a "mental stress disorder that required intervention

4

beginning in July 2005." Amended complaint (document no. 3) at para. 13. And, says Fontaine, his stress disorder "resulted in behavioral outbursts in the workplace." Id. Fontaine again complained to his supervisors about his working conditions and the ongoing harassment and abuse by co-workers, but says nothing was done to help him.

In the spring of 2008, Fontaine's supervisor began to threaten him with disciplinary action as a result of his "behavioral outbursts" at work. Eventually, he was demoted to a janitorial position. Still, the harassment and ridicule from co-workers continued. That, in turn, exacerbated his stress disorder and prompted additional outbursts at work. Fontaine alleges that his supervisor was aware of the situation, but did nothing to stop the harassment. Eventually, on January 15, 2009, he was confronted by the local postmaster and other postal employees, who pressured him to resign his position or else be fired. Fontaine says he "involuntarily yielded to the pressure to resign rather than be fired from the USPS." Amended complaint at para. 17. Subsequently, on April 28, 2009, after Fontaine applied for unemployment benefits, one of defendant's employees reported to the Rhode Island Department of Labor and Training that Fontaine had voluntarily resigned his position, thus

"thwarting Plaintiff's application for unemployment benefits." Id. at 18.

On March 23, 2009, 67 days after he "involuntarily resigned" from the USPS, Fontaine contacted an Equal Employment Opportunity ("EEO") counselor in an effort to resolve his claims of harassment and discrimination. At that time, Fontaine complained that the USPS failed to reasonably accommodate his physical and mental disabilities, discriminated against him based on those disabilities, and failed to prevent the ongoing harassment by his co-workers. He did not, however, raise any claim that defendant (or any of defendant's employees) retaliated against him for his having engaged in some form of protected conduct.

Fontaine's claims of discrimination were not resolved at the informal level and, on May 14, 2009, he filed a formal administrative complaint of discrimination, alleging that he had been subjected to discrimination based upon his seizure disorder, stress disorder, and shoulder and wrist disorders. Additionally, Fontaine asserted that he had been the victim of unlawful retaliation for having complained about his co-workers' harassing behavior toward him.

In June of 2009, the USPS formally dismissed Fontaine's complaint, concluding, among other things, that it was not filed in a timely manner. Fontaine appealed the agency's denial of his complaint to the Equal Employment Opportunity Commission ("EEOC"). In January of 2010, the EEOC upheld the USPS's dismissal of Fontaine's complaint based on his failure to timely exhaust available administrative remedies. This suit followed.

**Discussion**

I.  Fontaine Did Not Timely Exhaust Administrative Remedies.

Before pursuing his claims under the Civil Rights Act and/or the Rehabilitation Act in federal court, Fontaine was obligated to exhaust those administrative remedies available to him. As a first step in that process, he was required to contact the USPS EEO counselor within 45 days from the date of the discriminatory act(s) of which he complains. See 29 C.F.R. § 1614.105(a)(1). See also Roman-Martinez v. Postmaster General, 100 F.3d 213, 216-17 (1st Cir. 1996) (holding that a postal employee advancing workplace discrimination claims under Title VII and the Rehabilitation Act had to contact an EEO counselor within time limits prescribed by applicable regulations). As noted above, however, Fontaine did not contact the USPS EEO counselor until March 23, 2009 - more than five years after the first alleged

7

acts of workplace discrimination, and over two months after he stopped working for the USPS.

Not surprisingly, then, the Postmaster General says Fontaine failed to comply with the 45-day administrative exhaustion requirement. In response, Fontaine says his amended complaint "alleges a hostile working environment . . . based on the entirety of the discrete acts of discrimination" he has identified. Plaintiff's objection (document no. 6-1) at 2. In other words, Fontaine asserts that he has alleged a "continuing violation" theory of workplace discrimination. Thus, says Fontaine, as long as he contacted an EEO counselor within 45 days of the "last of a series of discrete acts and circumstances constituting his hostile work environment claim," id. at 3, he complied with the administrative filing deadline.

But, even accepting, for the sake of argument, Fontaine's "continuing violation" theory, he did not contact the USPS EEO counselor within 45 days of his "forced resignation" from the USPS - the last day on which he could have been subjected to workplace discrimination. Nevertheless, Fontaine says that he did comply with the 45-day administrative filing deadline because he contacted the EEO counselor within 45 days of "Defendant's thwarting of Plaintiff's application for unemployment benefits

8

. . . which occurred on or about April 28, 2009." Plaintiff's objection at 2. As the Postmaster General points out, however, the alleged interference with Fontaine's receipt of state unemployment benefits does not constitute an adverse employment action cognizable under Title VII. The court of appeals for this circuit recently made precisely that point:

> An "adverse employment action" is one that affects employment or alters the conditions of the workplace, and typically involves discrete changes in the terms of employment, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.

Morales-Vallellanes v. Potter, 605 F.3d 27, 35 (1st Cir. 2010) (citations and internal punctuation omitted).[1]

Even construing the facts alleged in the amended complaint in the light most favorable to Fontaine, and drawing all reasonable inferences in his favor, it is plain that he failed to contact the USPS EEO counselor in a timely manner and, therefore, did not properly exhaust available administrative remedies as is required.

---

[1] Parenthetically, the court notes that it seems likely that, for Fontaine to demonstrate that an agent or employee of the Postmaster General "wrongfully interfered" with his receipt of unemployment benefits, he would have to first show (or, at this stage of the proceeding, at least allege) that he was actually entitled to such benefits. His amended complaint makes no such allegation.

II. <u>Equitable Tolling</u>.

If his efforts to exhaust available administrative remedies were untimely, that apparent untimeliness should be excused, Fontaine argues, on grounds that his mental illness prevented him from complying with the applicable limitations period:

> Plaintiff did not contact a USPS EEO counselor until March 23, 2009, 22 days beyond the 45 day limit set forth in the applicable regulations as applied to the date of his forced resignation from the USPS on January 15, 2009. Defendant's principal argument in his Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) is that Plaintiff's delay bars the instant suit. Plaintiff urges contrarily that the doctrine of equitable tolling on mental illness grounds is applicable in this matter to lift that bar.

Plaintiff's objection at 3-4.

Although the administrative exhaustion requirements applicable to Fontaine are mandatory, his failure to timely comply with them does not divest this court of jurisdiction over his claims. <u>See generally</u> <u>Zipes v. Trans World Airlines</u>, 455 U.S. 385, 393 (1982); <u>Bonilla v. Muebles J.J. Alvarez, Inc.</u>, 194 F.3d 275, 278 (1st Cir. 1999). And, under very limited circumstances, courts have permitted plaintiffs, like Fontaine, to avail themselves of the doctrine of equitable tolling.

> To be sure, an employee's failure to follow the administrative route to its due completion does not

>automatically doom a Title VII claim. The charge-filing requirement is mandatory but not jurisdictional; therefore, it is subject to a host of equitable exceptions. In deference, however, to Title VII's carefully crafted temporal limitations, we invoke those exceptions sparingly and interpret them narrowly. Thus, an employee is generally not entitled to avail herself of the doctrine of equitable tolling if the procedural flaw that prompted the dismissal of her claim is of her own making.

Jorge v. Rumsfeld, 404 F.3d 556, 565 (1st Cir. 2005) (citations omitted). See also Bonilla, 194 F.3d at 279 ("Generally speaking – peculiar circumstances may leave some wiggle room – equitable tolling is not appropriate unless a claimant misses a filing deadline because of circumstances effectively beyond her control (such as when her employer actively misleads her, and she relies on that misconduct to her detriment).").

Here, Fontaine says he is entitled to equitable tolling of the 45-day filing deadline because:

>Plaintiff suffered from a mental stress disorder at least as early as July 2005. During perhaps the most critical period in the chronology of events alleged in the Amended Complaint, the period following his alleged forced resignation from Defendant's employ, Plaintiff was a patient of Dr. Steven R. Roth, a family practitioner at Thundermist Health Center in Wakefield, R.I. In an affidavit attached to this memorandum, Dr. Roth states his opinion clearly that as a result of his various mental conditions, Plaintiff was unable to manage his affairs, understand his legal rights, or act upon them in a rational way.

Plaintiff's objection at 4. Bearing in mind that the Postmaster General has moved to dismiss the amended complaint pursuant to Rule 12(b)(6), Fontaine's efforts to avail himself of equitable tolling principles create two related problems: first, in support of his claim, he has relied upon factual claims and documentary evidence that were not referenced in, or attached to, the amended complaint (e.g., medical records, an affidavit from a treating physician, etc.); and, second, whether his mental condition was sufficiently severe during the relevant time period to warrant application of equitable tolling principles raises a material (and apparently disputed) question of fact. Consequently, it does not lend itself to resolution on a motion to dismiss.

## Conclusion

Fontaine failed to exhaust his administrative remedies within the time prescribed. But, at this stage of the litigation, the court cannot determine whether his is one of those rare cases entitled to the benefit of equitable tolling. Accordingly, defendant's motion to dismiss (document no. 4) is necessarily denied.

Fontaine's claimed entitlement to equitable tolling is best determined at the summary judgment stage, when the record will be more fully developed. Depending on the nature of the evidence

Fontaine plans to present in support of his equitable tolling argument, it is possible that the matter can be resolved on the parties' papers.  If not, the court may conduct a hearing, take evidence, and resolve the issue prior to trial.  <u>See</u> <u>Neverson v. Bissonnette</u>, 261 F.3d 120, 127 (1st Cir. 2001).  As Fontaine no doubt understands, however, he bears a substantial burden.  The court of appeals for this circuit has made it clear that equitable exceptions to charge-filing deadlines are applied "sparingly" and interpreted "narrowly."  <u>Jorge</u>, 404 F.3d at 565. <u>See also</u> <u>Nunnally v. MacCausland</u>, 996 F.2d 1, 4-5 (1st Cir. 1993) (noting that such equitable relief, when premised on a mental disability, is extended "only sparingly," and "only if the federal employee's proof passes very vigorous tests" - that is, only when the plaintiff demonstrates that he was "unable to protect his legal rights because of an overall inability to function in society.") (citation and internal punctuation omitted).

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

February 28, 2011

cc:  Peter G. DeSimone, Esq.
     Dulce Donovan, Esq.